(March 27, 1915.)

## J. W. SMITH, Respondent, v. FARIS–KESL CONSTRUCTION COMPANY, LTD., and EMMETT IRRIGATION DISTRICT, Appellants.

[150 Pac. 25.]

CANAL CONSTRUCTION—MECHANIC'S LIEN—CLASSIFICATION OF MATERIALS REMOVED—EXPERT TESTIMONY—CONFLICT OF EVIDENCE—CONTRACT —DISAGREEMENT BETWEEN PARTIES — ENGINEER'S ESTIMATES — FRAUD OR MISTAKE—STIPULATION IN CONTRACT—TENDER—INTEREST —ATTORNEYS' FEES—LACHES—LIS PENDENS—WAIVER OF LIEN— SUBROGATION—PLEADING—TITLE SUBJECT TO LIEN—COSTS.

1. The classification of different kinds of material removed in the construction of a canal was the subject of difference of opinion between expert witnesses, and a trial court is not required to adopt, as a whole, the estimates or opinions of certain witnesses as against those of other witnesses.

2. The record in this case examined and found to come well within the established rule in this state that where there is a substantial conflict in the evidence, the appellate court will not disturb the findings or judgment of a trial court.

3. It is a well-established rule of law that where the contract provides that an engineer or architect shall be the umpire, or final arbitrator, between the parties should disagreement arise between

them growing out of the contract, in the absence of fraud or mistake or such undue influence or collusion as amounts to fraud, in making the estimates of the amount of work performed under the contract, the parties thereto are bound by such estimates.

4. In this case it was not stipulated in the contract that the estimates of the engineer should be final, binding or conclusive upon the parties; therefore such estimates were subject to attack for inaccuracy, and it was proper for the trial court to consider all the evidence offered and admitted touching the amount, character and classification of material handled by the respondent in the construction of the canal.

5. One of the appellants, before the commencement of the action, tendered to the respondent, in full payment of the amount due to him, a sum of money which was less than was found to be due by the court, which tender was rejected. Since the said sum was tendered, not as a partial payment, but as settlement in full, and since it was less than the amount found to be due by the court, such tender did not estop the accumulation of interest upon any part of the debt.

6. While the appellant construction company which employed the respondent does not own the property against which the lien is sought to be foreclosed, it owes the money sued for, and it was by reason of its failure to pay its debt that the expense of employing respondent's attorneys was incurred. The attorneys' fee is an incident of the judgment against said appellant, and it is liable therefor under sec. 5121, Rev. Codes.

7. When an issue of laches is presented by the answer of one of the appellants and it appears from the record that the trial of the case was commenced the next day after said appellant filed its answer; that its codefendant made no complaint of the delay which had theretofore occurred and that no motion to dismiss the action for failure to prosecute was made; and when the record does not disclose that said delay was due to the fault of the respondent, nor that either of the appellants was injured thereby; and when the record fails to disclose any fact from which it may be inferred that it was ever the intention of the respondent to abandon his claim of lien, the finding of the trial court that respondent was not guilty of laches will not be disturbed.

8. Lapse of time alone is not sufficient to justify a dismissal of the action. Where a defense of laches is sustained, it is upon the theory that the delay, together with other circumstances in the case, satisfactorily shows that the cause of action has been abandoned, or because it satisfactorily appears that it has resulted in injury to someone not responsible for the delay, and unless it does

so appear, or if the theory, or presumption, is overcome by other facts and circumstances, the defense should not prevail.

9.   Sec. 4142, Rev. Codes, provides for the filing of a *lis pendens* in actions affecting the title to or right of possession of real property, but this is necessary only for the purpose of giving record notice to subsequent purchasers and encumbrancers of the property who have not actual knowledge of the action, or of the claim upon which it is based, and, where a subsequent purchaser has full knowledge of a mechanic's lien in a suit to foreclose such lien, a contention that in order to charge such purchaser with notice of the pendency of the suit a *lis pendens* must be filed cannot be sustained.

10.   In order to establish a waiver of lien the intention to waive must clearly appear, and such waiver will not be presumed or implied, contrary to the intention of the party whose rights would be injuriously affected thereby unless by his conduct the opposite party was misled to his prejudice into the honest belief that such waiver was intended or consented to. The facts in this case considered and *held* not to constitute a waiver of the lien but only the priority thereof to a certain mortgage.

11.   Facts must be alleged upon which a claim of subrogation is based, and where no such facts appear in the pleadings, it is not error for the trial court to refuse to grant such relief.

12.   A mechanic's lien extends only to such right, title and interest as the owner, at whose instance the improvement was made, had in the property at the time the lien attached, and a purchaser at a sale to satisfy said lien can acquire no greater right, title or interest than that.

13.   In this case the lien attached to such right, title and interest as the Canyon Canal Company, Limited, had in the property at the time such lien attached to it, subject to the prior lien, if any, now existing and to the same extent does exist, of a certain mortgage given to secure the payment of bonds of said canal company in the sum of $350,000.

14.   The right to recover costs is statutory, and the prevailing party cannot recover his costs unless he conform to the provisions of the statute.

15.   The phrase, "decision of the court," as used in sec. 4912, Rev. Codes, refers to a formal decision, or findings of fact, conclusions of law and decree, or judgment, and a memorandum of costs and disbursements filed prior to the making of such formal decision is prematurely filed, and a motion to strike the same from the files upon that ground should be sustained.

APPEAL from the District Court of the Third Judicial District for Ada County. Hon. Carl A. Davis, Judge.

Suit to foreclose mechanic's lien. Judgment for plaintiff. *Modified.*

Martin & Cameron and Perky & Crow, for Appellant Faris-Kesl Construction Co.

Sullivan & Sullivan and Richards & Haga, for Appellant Emmett Irrigation Co.

A judge cannot make a finding inconsistent with the claims and proofs of both parties and inconsistent with the evidence in the case. (*King v. Bendell Com. Co.*, 7 Colo. App. 507, 44 Pac. 377; *Robeson v. Miller*, 4 Colo. App. 313, 35 Pac. 880; *State ex rel. Kimbrell v. People's Ice Storage etc. Co.*, 246 Mo. 168, 151 S. W. 101.)

In order to charge purchasers with notice of the pendency of an action it must be diligently prosecuted, and in addition under our statutes notice of *lis pendens* must be filed where the suit affects real property. (*Bybee v. Summers*, 4 Or. 354, 360; *Taylor v. Carroll*, 89 Md. 32, 42 Atl. 920, 44 L. R. A. 479; *Bridger v. Exchange Bank*, 126 Ga. 821, 115 Am. St. 118, 56 S. E. 97, 8 L. R. A., N. S., 463; *Hayes v. Nourse*, 114 N. Y. 595, 11 Am. St. 700, 22 N. E. 40; *Watson v. Wilson*, 2 Dana (Ky.), 406, 26 Am. Dec. 459; *Richardson v. White*, 18 Cal. 102; *Warnock v. Harlow*, 96 Cal. 298, 31 Am. St. 209, 31 Pac. 166.)

A mechanic, contractor or laborer may waive his lien, and respondent by his contract waived his entire lien and not merely such priority as he might have had over the mortgage. (27 Cyc. 262, 264; 20 Am. & Eng. Ency. of Law, 494; Bloom, Mechanics' Liens, 627, 630; *Idaho Gold Min. Co. v. Winchell*, 6 Ida. 729, 96 Am. St. 290, 59 Pac. 533; *Bowen v. Aubrey*, 22 Cal. 566.)

There is also an implied waiver of the lien by the acceptance of the guaranty of Trowbridge & Niver Company. (*Dwyer v. Salt Lake City Copper Mfg. Co.*, 14 Utah, 339, 47 Pac. 311; 20 Am. & Eng. Ency. of Law, 496; *Brown v. Williams*, 120

Pa. St. 24, 6 Am. St. 689, 13 Atl. 519; *Bailey v. Adams,* 14 Wend. 201; *Kankakee Coal Co. v. Crane Bros. Mfg. Co.,* 138 Ill. 207, 27 N. E. 935; *Dutton v. New England Mutual Fire Ins. Co.,* 29 N. H. 153; *Sprague v. Provident Sav. & Trust Co.,* 163 Fed. 449, 90 C. C. A. 71.)

The franchise and rights of a *quasi*-public corporation, owing important duties to the public, and the property vested in it necessary for their use and enjoyment and the accomplishment of the purposes for which it was created, constitute an entirety, and, in the absence of special statutory authority, are not subject to be seized and sold on execution or for mechanics' liens. (*Chicago & N. W. Ry. Co. v. Forest County,* 95 Wis. 80, 70 N. W. 77; *Chapman Valve Mfg. Co. v. Oconto Water Co.,* 89 Wis. 264, 46 Am. St. 830, 60 N. W. 1004; *Plymouth Ry. Co. v. Colwell,* 39 Pa. St. 337, 80 Am. Dec. 526; *Guest v. Merion Water Co.,* 142 Pa. St. 610, 21 Atl. 1001, 12 L. R. A. 324; *Buncombe County Commrs. v. Tommey,* 115 U. S. 122, 5 Sup. Ct. 1186, 29 L. ed. 305; *Pittsburg Testing Lab. v. Milwaukee etc. Light Co.,* 110 Wis. 633, 84 Am. St. 948, 86 N. W. 592; Elliott on Railroads, 2d ed., sec. 1066; Thompson on Corp., 2d ed., sec. 3395; 20 Am. & Eng. Ency. of Law, 2d ed., 296; Phillips on Mechanics' Liens, secs. 180, 181; Boisot on Mechanics' Liens, secs. 188, 209; 3 Dillon, Mun. Corp., 5th ed., sec. 993.)

The terms "buildings, bridges, canals and other structures," used in a mechanic's lien statute, will not be construed to include public buildings, or public bridges, or public canals, or other public structures, or structures, buildings or improvements owned by *quasi*-public corporations and constituting an essential part of the plant or works required by such corporations to accomplish the purposes for which they were created, or to discharge their duties to the public, unless the statute unmistakably shows that such was clearly the intention of the legislature. (Cases cited *supra,* and *Bank of Idaho v. Malheur Co.,* 30 Or. 420, 45 Pac. 781, 33 L. R. A. 141; *Bates v. Santa Barbara Co.,* 90 Cal. 543, 27 Pac. 438; *Loring v. Small,* 50 Iowa, 271, 32 Am. Rep. 136.)

The findings of fact and conclusions of law constitute the "decision of the court" under our own and similar statutes, and a memorandum of costs served and filed before the signing or filing of such findings and conclusions should be stricken out on motion. (Rev. Codes, secs. 4912, 4406, 4407; *Stewart Min. Co. v. Ontario Min. Co.*, 23 Ida. 724, 734, 736, 132 Pac. 787, 792; *Hamilton v. Spokane etc. Ry. Co.*, 3 Ida. 164, 167, 28 Pac. 408; *Jaldwell v. Wells*, 16 Ida. 459, 462, 101 Pac. 812; *Shurtliff v. Extension Ditch Co.*, 14 Ida. 416, 427, 94 Pac. 574; *Buster v. Fletcher*, 22 Ida. 172, 181, 125 Pac. 226, 229; *Porter v. Hopkins*, 63 Cal. 53; *Mullally v. Irish-American Benefit Society*, 69 Cal. 559, 561, 11 Pac. 215; *Dow v. Ross*, 90 Cal. 562, 27 Pac. 409; *Sellick v. De Carlow*, 95 Cal. 644, 30 Pac. 795; *Smith v. Alford*, 31 Utah, 346, 88 Pac. 16, 18; *McDonnell v. Huffine*, 44 Mont. 411, 120 Pac. 792, 797.)

A. A. Fraser, S. L. Tipton and Robert R. Wedekind, for Respondent.

There was evidence upon which the court based his findings and he did not guess at the quantities and the classification. "The rule that an appellate court will not disturb the findings or decisions of the trial court where there is a substantial conflict in the evidence is applicable to suits in equity as well as in actions of law." (*Stuart v. Hauser*, 9 Ida. 53, 72 Pac. 719.)

"If the party to whom tender is made recovers more than the amount tendered, he is entitled to costs." (*Elder v. Elder*, 43 Kan. 514, 23 Pac. 600; *Rankin v. Newman*, 107 Cal. 602, 607, 40 Pac. 1024, 41 Pac. 304.)

"Tender must be absolute; if made conditional upon giving a receipt in full for all demands it is not good." (*Butler v. Hinckley*, 17 Colo. 523, 30 Pac. 250.)

"The doctrine of laches in the prosecution of an action does not apply where the relative position of the parties has not been materially changed since the time when the cause of action accrued, and the delay has worked no wrong or serious inconvenience to the adverse party, so that substantial justice can still be done between the parties." (*Just v. Idaho*

*Canal & Imp. Co.,* 16 Ida. 639, 133 Am. St. 140, 102 Pac. 381; *Bergen v. Johnson,* 21 Ida. 619, 123 Pac. 484; *Cole's Admr. v. Ballard,* 78 Va. 139; *Cotrell v. Watkins,* 89 Va. 801, 37 Am. St. 897, 17 S. E. 328, 19 L. R. A. 754; 18 Am. & Eng. Ency. of Law, 2d ed., 99, 101, 111, 119.)

"An action to enforce a lien on real property is *lis pendens* as to a purchaser from a party pending suit or a person taking an encumbrance on a property while the action is pending or any other person acquiring rights during the litigation." (25 Cyc. 1458; *Stout v. Phillippi Mfg. etc. Co.,* 41 W. Va. 339, 56 Am. St. 843, 23 S. E. 571; *Empire Land & C. Co. v. Engley,* 18 Colo. 388, 33 Pac. 153; *Houston v. Timmerman,* 17 Or. 499, 11 Am. St. 848, 21 Pac. 1037, 4 L. R. A. 716; *Andrews v. National Foundry etc. Works,* 76 Fed. 166, 22 C. C. A. 110, 36 L. R. A. 139; *Green v. Rick,* 121 Pa. St. 130, 6 Am. St. 670, 15 Atl. 497, 2 L. R. A. 48; *London & S. F. Bank v. Dexter Horton & Co.,* 126 Fed. 593, 599, 61 C. C. A. 515.)

In order to establish a waiver the intention to waive must clearly appear, and the waiver of a lien will not be presumed or implied contrary to the intention of the party whose rights will be injuriously affected thereby, unless by his conduct the opposite party was misled to his prejudice in the honest belief that such waiver was intended or consented to.   (27 Cyc. 262, 264, 274.)

The contention that respondent is not authorized by law to enforce his claim as against this appellant on the theory that it is a *quasi*-public corporation whose property is not subject to a mechanic's lien is contrary to the decision of this court in *Nelson-Bennett Co. v. Twin Falls L. & W. Co.,* 14 Ida. 5, 93 Pac. 789.

The wording of sec. 4912, Rev. Codes, requiring the memorandum of costs to be filed within five days after notice of decision, contemplates a notice to the successful party by the unsuccessful, other than the mere filing of findings and conclusions.   (*Stickney v. Berry,* 7 Ida. 303, 62 Pac. 924.)

If notice to counsel is necessary other than the filing of the findings of fact and conclusions of law, recovery of costs in all cases tried by the court without a jury would be a hazard-

ous and doubtful thing. The court may make its own findings and conclusions, sign and file the same with the clerk unbeknown to counsel who has prevailed in the suit, or he may amend and hold the findings and conclusions submitted by counsel for a considerable time before signing and filing the same, and if counsel reside out of the district, or, it may be, without the state, he could never recover his costs unless the clerk, the court or opposing counsel gave him notice of the signing and filing of the findings of fact and conclusions of law. (*Dow v. Ross*, 90 Cal. 562, 27 Pac. 409; *Spoor v. Board of Supervisors of Riverside County*, 113 Fed. 26; *O'Neil v. Donahue*, 57 Cal. 226.)

It is clearly established that in all cases tried by the court without a jury, where the record does not show a decision of the court, as defined in *Stewart Min. Co. v. Ontario Min. Co.*, 23 Ida. 724, 132 Pac. 787, a notice of such decision to the successful party is an essential and necessary prerequisite before the unsuccessful party can claim a forfeiture of such costs. The record in this case does not show that respondent ever had knowledge of the "decision of the court," and such presumption may not be indulged in the absence of such showing.

MORGAN, J.—This action was commenced to foreclose a mechanic's lien claimed by the respondent against the main ditch and canal of the Canyon Canal Company, Limited, for work and labor done and performed by respondent as a subcontractor in the construction thereof. The appellant, Faris-Kesl Construction Company, was the original contractor and was made a defendant with a view to obtaining a personal judgment against it.

Subsequent to the commencement of the action and prior to the trial in the district court, the appellant, Emmett Irrigation District, became the successor in interest to the said Canyon Canal Company and was substituted for it as a defendant.

It is alleged in the complaint that the amount of excavating, grading, filling and clearing of land done and completed

by respondent under said contract was as follows: Embankment, 15,118 cubic yards; earth excavation, 37,450 cubic yards; gravel excavation, 5,670 cubic yards; loose rock excavation, 41,361 cubic yards; solid rock excavation, 35,959 cubic yards; clearing of sage-brush, 25.09 acres. That the amount of the contract price for such labor was $48,198.38, and that no part thereof has been paid except $30,641.87, and that there is now due under the terms of said contract the sum of $17,581.51, in which amount, together with interest thereon, costs and attorneys' fees, the respondent asked for judgment; also that the lien be foreclosed and the canal be sold to satisfy said judgment.

The appellant construction company in its amended answer admitted the execution of the contract and denied, among other things, that the excavating or grading or filling or clearing of land done or completed under said contract were in the amounts alleged in the complaint or were in any other amount or amounts than as follows: Embankment, 15,118 cubic yards; earth excavation, 65,479 cubic yards; gravel excavation, 6,352 cubic yards; loose rock excavation, 24,468 cubic yards; solid rock excavation, 23,361 cubic yards; clearing of sage-brush, 29.95 acres; force account, $15.00. Said appellant also denied that the amount of the contract price for said labor performed by respondent under said contract was $48,198.38, or any other amount or sum other than the sum of $36,037.82, and denied that the amount paid to respondent was the sum of $30,641.87, and alleged the fact to be that said appellant had paid to said respondent the sum of $33,856.26, and denied that there was due or owing to the respondent under said contract the sum of $17,581.51 or any other sum or amount or at all except the sum of $5,386.02. Upon the trial of this cause in the district court the parties stipulated that the appellant construction company, had paid to the respondent, upon the contract and for work performed by him thereunder, the sum of $30,720.25.

A number of other issues were presented by said complaint and amended answer and the appellant, Emmett Irrigation District, also answered, adopting the allegations of the appel-

lant construction company heretofore referred to, except as to the ownership of the property, and presenting additional issues which will, in so far as necessary to a determination of the questions presented by this appeal, be hereinafter discussed.

The trial court found the amount of excavating, grading, filling and clearing of land done and completed by respondent under said contract to be as follows:

| | |
|---|---:|
| Clearing of sage-brush, 29.95 acres......$ | 119.80 |
| Embankment, 15,118 yards at 11¢ per yard ................................. | 1,662.98 |
| Earth excavation, 51,056 yards at 11¢ per yard ........................... | 5,616.16 |
| Gravel excavation, 5,931 yards at 15¢ per yard ........................... | 889.65 |
| Loose rock excavation, 32,687 yards at 35¢ per yard........................ | 11,440.45 |
| Solid rock excavation, 29,986 yards at 75¢ per yard........................ | 22,489.50 |

That respondent was entitled to receive under the terms of said contract the sum of $42,218.54; that he had received $30,720.25 thereof, and that there was a balance due and unpaid thereon of $11,498.29, together with interest thereon at the rate of 7% per annum, which interest up to April 9, 1913, amounted to $5,231.72. The trial court also found $900 to be a reasonable amount to be allowed to respondent as attorneys' fees for the foreclosure of the lien, and, as a conclusion of law, found that respondent was entitled to recover from Faris-Kesl Construction Company said sums of money; also that respondent was entitled to a lien upon the property described in his complaint for the sum of $17,630, and that he was entitled to a decree foreclosing the same. Said lien to be subject and subordinate only to the lien of the first mortgage bonds in the amount of $350,000, secured by a trust deed executed by Canyon Canal Company to the American Trust & Savings Bank, dated June 15, 1905, and that if any deficiency should arise upon the sale the respondent should have a judgment against Faris-Kesl Construction Company for the

amount of such deficiency.   Judgment and decree were entered in accordance with the findings of fact and conclusions of law, from which judgment and decree appeals have been taken by Faris-Kesl Construction Company and Emmett Irrigation District.   An appeal was also taken by said appellants from an order denying their motion to strike from the files respondent's memorandum of costs and disbursements in said case.   All of said appeals were heard together.

It will be observed that no great difference exists between the parties as to the amount of material handled by respondent in the construction of said canal, but that one of the principal differences between them grows out of the classification of the materials so handled.   The evidence consisted of the testimony of a number of expert witnesses who gave the results of their estimates of the amount of earth, gravel, loose rock and solid rock removed.   There is a broad discrepancy between the testimony of the witnesses for the appellants and those for the respondent upon this point, and the trial court did not adopt the estimates of either of them, but found, with respect to each class of material, more than estimated by the witnesses for one party and less than estimated by those for the other.   This is assigned as error by the appellant, Faris-Kesl Construction Company, and it is urged that the findings of the trial court were arbitrary, that no witness testified to such amounts, and that the court should have adopted the estimates of some of the witnesses as to the classification.

Certain cases were cited in support of this contention by said appellant, but they do not appear to be in point, in that in each of the cases cited the facts are susceptible of definite proof, while in this case the proof upon this point consists entirely of the testimony of expert witnesses to their estimates and the results thereof.   It cannot be claimed for this class of testimony that it is accurate; the most that can be said for it is that it is approximate, and this is the best evidence of which a case of this nature is susceptible, for the classification of the different kinds of material removed from

a canal may be, and in this case was, the subject of difference of opinion between expert witnesses.   Certainly a trial court cannot be required to be more accurate in its findings than the nature of the case permits the evidence to be.   While the evidence is conflicting upon this point and no part of it has been adopted by the court as against any other part, as a whole it supports the findings.   It was the duty of the court to consider the evidence as a whole, and we are unable to say that an injustice has been done to any of the parties by the findings complained of.

As above indicated, decisions in cases involving questions by their nature susceptible of definite proof differ materially from a case of this kind which, by its nature, presents a question the decision of which is dependent upon expert or opinion testimony adduced from a number of witnesses differing in their estimates and opinions.

It is the settled law of this state that an appellate court will not disturb the findings or judgment of the trial court where there is a substantial conflict of the evidence.   This rule applies with equal force in actions at law and suits in equity, where a trial is had on oral evidence.   (*Stuart v. Hauser,* 9 Ida. 53, 72 Pac. 719; *Pine v. Callahan,* 8 Ida. 684, 71 Pac. 473; *Commercial Bank v. Lieuallen,* 5 Ida. 47, 46 Pac. 1020; *Sabin v. Burke,* 4 Ida. 28, 37 Pac. 352; *Spaulding v. Coeur d'Alene Ry. & Nav. Co.,* 5 Ida. 528, 51 Pac. 408.)

In this case there is a substantial conflict in the evidence as to the proper classification of the materials removed in the construction of the canal, and this court finds no error in the decision of the trial court in so far as it fixes the amount and classification of the materials so removed by the respondent.

Said appellant insists that since the respondent accepted certain payments on monthly estimates made as the work progressed, by so doing he waived all objections to the estimates so made and, by receiving ninety per cent of the amount due as shown by said estimates, it amounted to an accord and satisfaction of all except the ten per cent retained under the terms of the contract.   This contention makes necessary a con-

sideration of the second paragraph of said contract, which is as follows:

"Second.   That for and in consideration of the faithful performance of each and every covenant and agreement herein contained, to be kept and performed by the party of the first part, the party of the second part hereby contracts and agrees to pay to the party of the first part, his heirs, executors or administrators, the following schedule of prices, to wit:

"For earth excavation or embankment. .$ .11 per cu. yd.

"For gravel excavation or embankment.   .15 per cu. yd.

"For loose rock excavation. . . . . . . . . . . .   .35 per cu. yd.

"For solid rock excavation. . . . . . . . . . . ·   .75 per cu. yd.

"For clearing sage-brush. . . . . . . . . . . . . .  4.00 per acre.

"Payments to be made as follows: Approximate of estimates of the amount of work done during each month, will be taken by the engineer of the Canyon Canal Company, Ltd., in charge of the work, on or about the last day of each month during the progress of the work and the amount of such estimate less ten per cent (10%) shall be made to the party of the first part on or before the 20th day of the following month; the reserved percentage (10%) to be withheld and retained by the party of the second part until the work is completed and accepted by the engineer of the said Canyon Canal Company, Ltd.   The percentage retained, as above, together with the balance due on the final estimate will be paid to the party of the first part, within thirty (30) days after the work is completed and accepted by the chief engineer of the Canyon Canal Company, Ltd., as hereinabove provided, and the presentation of satisfactory evidence that all bills for labor and material and all other claims that are or might become liens against the property of the said Canyon Canal Company, Ltd., are fully paid and satisfied."

The receipt by respondent of partial payments based upon the approximate estimates mentioned in the contract cannot be deemed to be a waiver of his right to question the final estimate, and to do so would be to find that the parties had agreed that estimates which purport to be only approximately correct are absolutely correct.   A careful examination of the

contract does not disclose that they so agreed. Since the payments to be made upon the estimates were partial payments and the estimates themselves but approximate estimates, the clause in the contract referring to them does not bind the parties to the final estimate nor provide that these approximate estimates shall be considered either accurate or binding to any other or greater extent than as fixing the amounts to be paid upon the contract as partial payments. To this extent the contract did bind the respondent, and therefore, by accepting the payments thereby found to be due, he did not waive his right to question the final estimate or to demand payment according to the schedule fixed by the contract.

Counsel for appellant construction company has cited a great many authorities in support of the contention that in the absence of evidence of fraud or mistake, or such undue influence or collusion as amounts to fraud in making the estimates of the amount of work performed under the contract, the parties thereto are bound by such estimates. These cases have all been carefully examined by the court and are found to correctly state the rule in case the contract provides that an engineer or architect shall be the umpire or final arbitrator between the parties whenever any disagreement arises or misunderstanding exists between them growing out of the contract. As an example of this class of cases, that of *Hot Springs Ry. Co. v. Maher,* 48 Ark. 522, 3 S. W. 639, cited on behalf of said appellant, is selected. In that case it was provided in the contract, among other things: "It is mutually agreed by and between the parties hereunto that all questions relating to quantity, quality or manner of construction of said above stipulated work shall be decided by the engineer in charge of said work, and his decision shall be final and conclusive on all matters pertaining to this contract." By comparing said provisions to the contract here under consideration the distinction will be readily observed and cannot well be pointed out more clearly than is done in the case of *Memphis etc. Ry. Co. v. Wilcox,* 48 Pa. St. 161, also cited in behalf of said appellant, wherein it is said: "The first and second assignments of error present the same question; and

that is, whether the estimates of the chief engineer are to be considered conclusive, precluding all other testimony on the same subject matter, unless fraud or bad faith be shown on his part.   The cases of the *Monongahela Navigation Co. v. Fenlon,* 4 Watts & S. (Pa.) 205, and succeeding cases, amongst which are *Faunce v. Burke & Gonder,* 16 Pa. St. 469, 55 Am. Dec. 519, *Snodgrass v. Gavit,* 28 Pa. St. 221, *Lauman v. Young,* 31 Pa. St. 306, and *McGrann v. North Lebanon R. R. Co.,* 29 Pa. St. 82, in which the estimates and decisions of the company's engineers, in case of disputes between the contractors and the company, were held to be conclusive, all rest on a positive stipulation in the contract to that effect; and even the validity of the express stipulation was hotly contested in the first mentioned case, because it was urged that it was a provision by which the company was enabled to choose its own judge, and one that was directly interested, to sustain their quarrel.   To this it was answered that such an objection was waived by the stipulation, and that it was even competent for a contractor to agree to the arbitrament of an interested party, if he chose; and when, with full knowledge he did so, he must abide the result.   The subsequent cases were all ruled by the decision of this case.

"In this contract, however, this stipulation for finality is wanting, and this makes a most material difference.   It provides for monthly estimates, and in the end for a final estimate by the engineer, without any declaration as to conclusiveness.   His estimates and acts have no quality, therefore, of an adjudication.   It must depend for finality on its inherent accuracy, and to test whether it be accurate or not, it is liable to be met by any competent proof, which would disclose its errors and mistakes, if there be any."

In the contract here under consideration it was not stipulated that the estimates of the engineer should be final, binding or conclusive upon the parties; therefore the allegations of fraud in the complaint were immaterial and the estimates of the engineer were subject to attack for inaccuracy, and it was proper for the trial court to consider all the evidence offered and admitted touching  the amount, character and

classification of material handled by respondent in the construction of the canal. It appears that the trial court did this, and we find no error in the conclusion reached as to the principal sum due under the contract.

This conclusion disposes of the contention of said appellant relative to its tender of $8,968.23 to respondent, which tender was rejected. Since that is less than the amount found to be due upon the contract, and since said amount was tendered, not as a partial payment, but as settlement in full, it did not estop the accumulation of interest upon any part of the debt.

The second point urged by appellant construction company is based upon its fourth assignment of error, and is to the effect that since the lien was not being foreclosed against its property no judgment for attorneys' fees should have been allowed against it. In support of this contention counsel for said appellant cites a number of authorities to the effect that where plaintiff fails to establish his lien, he cannot recover attorneys' fees. Undoubtedly this is the law, but it is beside the point in controversy. In this case the plaintiff did establish his lien. Sec. 5121, Rev. Codes, is as follows:

"Any number of persons claiming liens against the same property may join in the same action, and when separate actions are commenced the court may consolidate them. The court shall also allow as part of the costs the moneys paid for filing and recording the claim, and reasonable attorney's fees."

This court had under consideration said sec. 5121, Rev. Codes, in case of *Shaw v. Johnston et al.,* 17 Ida. 676, 107 Pac. 399, and while the contention here made was not presented in that case, the following quotation from it may be of value as tending to show that the attorney's fee is merged with and becomes a part of the principal debt for which foreclosure of the lien is sought:

"Under the provisions of said sec. 5121, the attorneys' fees are not a part of the costs, and therefore the fact that the plaintiff in the lower court recovered less than the sum of $100 is immaterial so far as attorneys' fees are concerned,

as attorneys' fees are recoverable even though the amount of the judgment is less than $100. The attorneys' fees are a lien upon the property. (*Peckham v. Fox*, 1 Cal. App. 307, 82 Pac. 91.) In that case it was held that if a plaintiff recover in a suit to foreclose a mechanic's lien, that provision of sec. 1195, providing for an attorney's fee should be construed as entitling plaintiff to such fee as a part of the recovery, and therefore conferred a lien for the attorney's fee as well as for the subject matter of the action."

It is said in a footnote appearing in Cyc., vol. 27, page 463: "The attorney's fees are not strictly costs but are incidental to the lien of the judgment to which the successful lienor is entitled as a part of the recovery and for which the lien is enforced as for the principal debt."

In case of *Rapp v. Spring Valley Gold Co.*, 74 Cal. 532, 16 Pac. 325, it is said:

"The first position of the appellants is that the stipulation waived the attorney's fee. The material portion of the stipulation is as follows: 'Plaintiffs shall reduce their claims to judgment in the following manner: Said Gregory, in conjunction with Mr. N. S. Walker, Jr., vice-president of the company, shall immediately, or as soon as they can, ascertain and fix the amount due to each of the plaintiffs in said suit, and upon such ascertainment, judgment shall accordingly be entered in said suit for the foreclosure of the merchanic's liens sued on.' The argument for the appellants upon this language is that the provision is that judgment should be entered for the amount due to the plaintiffs, and, by implication, for nothing else, and that the attorney's fee was not a part of the amount due to the plaintiffs. This argument proves too much. It would exclude a judgment for costs, as well as for attorney's fees. Costs are not a part of the amount due to the plaintiffs, but it is not disputed by appellants that the judgment for costs was proper. The attorney's fee in this kind of case is not, strictly speaking, part of the costs. If allowed by the court, it need not be placed in the memorandum of costs. But it was properly allowed, for the same reason that costs were allowed, viz., that it was a neces-

sary incident of the judgment stipulated for, and was not expressly, or by necessary implication, excluded by the stipulation. That the attorney's fee in foreclosure is merely an incident of the judgment, and not an element of the cause of action, was held in *Carriere v. Minturn*, 5 Cal. 435. In that case Heydenfeldt, J., delivering the opinion, said: 'The counsel fees stipulated to be paid were not the cause of action, but, like the costs, a mere incident to it, and may be fixed by the chancellor at his discretion, not exceeding the amount stipulated.' And this case was approved and followed in *Monroe v. Fohl*, 72 Cal. 568, 14 Pac. 515, 516. If the attorney's fee was an incident to the judgment stipulated for, it was properly allowed by the court, unless excluded by the stipulation, which, as above stated, we do not think was the case."

While said appellant construction company does not own the property against which the lien is sought to be foreclosed, it owes the money sued for, and it is by reason of its failure to pay its debt that the expense of employing respondent's attorneys was incurred. It was made a party defendant and a judgment was procured against it and, as indicated in the foregoing authorities, the attorney's fee is an incident to the judgment.

It has been held, and properly, too, that where the owner of property has been forced to pay attorneys' fees to a successful lien claimant, he can recover back the amount from the contractor who owed the debt for which the lien was foreclosed. (*Covell v. Washburn*, 91 Cal. 560, 27 Pac. 859; *Clancy v. Plover*, 107 Cal. 272, 40 Pac. 394.)

Since the appellant construction company contracted and still owes the debt to secure which the lien was filed and to recover which the foreclosure is sought, and since, together with the owner, it is a party against whom judgment was awarded of which the attorney's fee is an incident and part, and since said appellant is liable for the payment of the attorney's fee, even as between itself and its codefendant, it cannot be successfully urged that this portion of the judgment must first be taken against and collected from its co-

defendant and then recovered from said appellant construction company in a separate action wherein its codefendant is plaintiff and it is defendant. One of the commendable principles of equity is that it does not encourage a multiplicity of suits.

The appellant Emmett Irrigation District presents a number of assignments of error in addition to those relied upon by the appellant construction company, among them being "that there was no evidence to justify or sustain the finding that plaintiff was not guilty of laches in prosecuting his suit." The complaint in this case was filed on May 6, 1907, and the original answer of the construction company on September 16th of the same year. An amended answer was filed by said construction company, which by oversight does not appear in the transcript, and the copy supplied to the record does not show the date of filing, but it appears to have been verified on January 11, 1912. On February 7, 1912, on motion of counsel for the defendants, the said appellant, Emmett Irrigation District, was substituted as a defendant for the Canyon Canal Company, Limited. It answered on February 8th and the case was set for trial on February 9, 1912, upon which date the trial of the case was commenced, and it seems to have been prosecuted without undue interruption until its conclusion. While the clerk's minutes show that between the date of filing the original answer of appellant construction company and the date of the beginning of the trial the case was repeatedly set for hearing and was stricken from the calendar or continued for the term, it does not appear that these delays were due to any fault on the part of the respondent nor that they met with any opposition upon the part of anyone else, neither does it appear that it was ever the intention of respondent to abandon his claim of lien; furthermore, the trial commenced on the next day after said appellant irrigation district answered, and its codefendant the construction company makes no complaint of the delay which had occurred prior to that time. No motion was made to dismiss the case for failure to prosecute, and the trial court found that as a fact "that the plaintiff was not guilty of

laches in prosecuting his suit; that the complaint was filed and an appearance of the defendants made in due time, and that Emmett Irrigation District took over the Canyon canal with full knowledge of the plaintiff's claim and has not been damaged or injured by the delay of plaintiff in prosecuting his action." The issue as to whether or not the respondent was guilty of laches was presented by the answer of the appellant irrigation district, and we find nothing in the record to sustain its allegations in that behalf.

After stating the rule "that independent of any statute of limitation, courts of equity uniformly decline to assist a person who has slept upon his rights and shows no excuse for his laches in asserting them," this court in the case of *Just v. Idaho Canal etc. Co.*, 16 Ida. 639, 133 Am. St. 140, 102 Pac. 381, said: "There is no doubt but that the rule contended for by appellants is the general rule adopted in courts of equity. It has been recognized and followed in this court. (*Idaho G. M. Co. v. Union Min. etc. Co.*, 5 Ida. 107, 121, 47 Pac. 95; *Ryan v. Woodin*, 9 Ida. 525, 75 Pac. 261.) As we understand the rule, however, it has this exception, that it is not invoked or applied by the courts in cases where it manifestly appears that its application is not essential in order to protect the adverse party from being placed in a worse condition by reason of the delay than he would have been in had the action been prosecuted with greater diligence."

In case of *Bergen v. Johnson*, 21 Ida. 619, 123 Pac. 484, the court in the syllabus said: "Where laches is plead as a defense, the facts and circumstances of each case must govern the court in determining the sufficiency of the laches to constitute a defense to the cause of action. Lapse of time may be considered as an important element, but is not controlling, and the court should give proper and due regard to the surrounding circumstances and the acts of the parties and their relationship to the property involved in the controversy."

Lapse of time alone is not sufficient to justify a dismissal of the action. In cases of this kind, when a defense of laches is sustained it is upon the theory that the delay, taken with other circumstances in the case, is satisfactory evidence that

the cause of action has been abandoned, or that it resulted in injury to someone not responsible for the delay, and where this theory, or presumption, is overcome by. other facts and circumstances, the defense should not prevail.

Laches has been defined in 18 Am. & Eng. Ency. Law, 2d ed., 97, as follows: "Laches is such neglect or omission to assert a right as, taken in conjunction with the lapse of time more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity."

A part of the syllabus in case of *Coles v. Ballard,* 78 Va. 139, is as follows:

"Laches is the neglect to do something which a party ought to do, and a mere lapse of time, unaccompanied by some circumstance affording evidence of a presumption that the right has been abandoned, is not considered laches."

In this case the finding of the trial court that the plaintiff had not been guilty of laches is not error and will not be disturbed.

Said appellant irrigation district further contends that "in order to charge purchasers with notice of the pendency of an action it must be diligently prosecuted, and in addition under our statute notice of *lis pendens* must be filed where the suit affects real property." It is true that sec. 4142, Rev Codes, provides for the filing of *lis pendens* in actions affecting the title to or right of possession of real property, but this is necessary only for the purpose of giving record notice to subsequent purchasers or encumbrancers of the property who have not actual knowledge of the action or of the claim upon which it is based. In this case the trial court found that the Emmett Irrigation District took over the canal with full knowledge of the respondent's claim, and the record amply justifies such finding, so the contention of the said appellant that in this case the filing of a *lis pendens* was necessary to give it notice cannot be sustained.

It appears that the Canyon Canal Company, Limited, the original builder and owner of the canal, made and executed a mortgage or trust deed upon said property to the American

Trust & Savings Bank, as trustee, to secure the payment of certain first mortgage bonds in an amount not to exceed $350,000, and it further appears that Faris-Kesl Construction Company, in order that said mortgage or trust deed might be a first lien upon said property, entered into a contract in writing, the part of which material to be considered in this case is as follows:

"Now, therefore, in consideration of the premises and the sum of one dollar and other valuable considerations received by the Faris-Kesl Construction Company, Limited, from the parties interested in having said mortgage constitute a first lien on said canal system, has and hereby does waive and release on behalf of itself and its successors, assigns and subcontractors all lien or right of lien for work done or to be done or material furnished or to be furnished, in the construction of any part of the canal system of said the Canyon Canal Company, Limited, superior to said trust deed or mortgage upon the said canal system of the Canyon Canal Company, Limited, meaning and intending hereby to make and constitute the said trust deed a first and paramount lien for the security of said bonds upon all the property of the Canyon Canal Company, Limited, aforesaid."

The eighth paragraph in the contract made and entered into by and between the respondent and the appellant construction company, under which the work was performed for which the claim of lien was made, is as follows:

"Eighth. The party of the first part further agrees to and does hereby waive any lien on the property of the Canyon Canal Company, Ltd., as the Faris-Kesl Construction Company has waived its lien in favor of the holders of the first mortgage bonds under the trust deed issued by said Canal Co., and accepted instead thereof, the obligation of Trowbridge Niver and Co., the purchaser of said bonds to pay the contractor directly from the proceeds of the sale of said bonds."

It is urged by the appellant irrigation district that by the eighth paragraph in his contract, above quoted, the respond-

ent waived his entire lien and not merely such priority as he might have had over the mortgage.

It is entirely apparent from the language in said paragraph 8th of the contract between respondent and the appellant construction company that it was the intention of the parties that the respondent should and did waive his lien in the same manner, and to the same extent, said construction company had waived its lien, and not otherwise. "What constitutes a waiver is essentially a question of intention. . . . . In order to establish a waiver the intention to waive must clearly appear, and a waiver of the lien will not be presumed or implied contrary to the intention of the party whose rights would be injuriously affected thereby unless by his conduct the opposite party was misled to his prejudice into the honest belief that such waiver was intended or consented to." (27 Cyc. 262.)

From the language of the waiver the appellants were not justified in a belief that any intention existed upon the part of the respondent to waive his lien, except in so far as to make it subsequent to the mortgage above mentioned, and there is no error in the finding of the trial court to the effect that the respondent did not waive his lien on said Canyon canal for the work and labor performed thereon under the terms of his contract, but did by contract waive the priority of his lien to the $350,000 mortgage made by said Canyon Canal Company in favor of the American Trust & Savings Bank, as trustee.

The appellant irrigation district assigns as error the action of the court in not finding and deciding that in the event the said appellant had, in order to protect its property and irrigation system, paid off and discharged the lien of said $350,000 mortgage, or any portion thereof, that said appellant should be subrogated to the rights and priorities of the beneficiaries under said mortgage.

Counsel for said appellant have cited a great number of authorities and have devoted a large portion of their brief of argument to this contention. The idea of subrogation appears to be an afterthought which has occurred to the said

appellant, or its counsel, since the trial or, at the earliest, since its answer was filed, as there is no allegation in any of the pleadings to support such a finding had the court made it. That facts must be alleged upon which the claim to the right of subrogation is based is a rule so elementary and universal that no authorities need be cited to support it.

The said appellant irrigation district assigns as error the action of the court in deciding that the right, title and interest of the Canyon Canal Company, Limited, or of its successor, the said appellant, could be subject to a mechanic's lien. Said appellant earnestly urges that works of a public character are not subject to the mechanic's lien law unless the statute shows clearly an intention on the part of the legislature to include such works. The section of the statute granting a right to a mechanic's lien is 5110, Rev. Codes, and the part necessary to be considered in this connection is as follows:

"Every person performing labor upon, or furnishing materials to be used in the construction, alteration or repair of, any mining claim, building, wharf, bridge, ditch, dike, flume, tunnel, fence, machinery, railroad, wagon road, aqueduct to create hydraulic power, or any other structure, or who performs labor in any mine or mining claim, has a lien upon the same for the work or labor done or materials furnished, whether done or furnished at the instance of the owner of the building or other improvement or his agent. . . . . "

Such act is a part of title 4 of the Rev. Codes, and we are admonished by the legislature in sec. 5150, which is also a part of said title 4, as follows:

"This title establishes the law of this state, respecting the subject to which it relates, and its provisions and all proceedings under it are to be liberally construed with a view to effect their object."

This question was before the court in case of *Nelson Bennett Co. v. Twin Falls Land & Water Co.*, 14 Ida. 5, 93 Pac. 789, and while it is contended by counsel for the appellant that the questions here presented were not discussed by counsel or considered by the court in said case, an examination

of the opinion of the court in that case indicates to the contrary, for therein it is said:

"An examination into the character and extent of the appellants' interest in this property and these works is at once suggested by reason of the contention that it makes to the effect that a mechanic's lien cannot be maintained against this property. The Land & Water Company has argued with much force and earnestness that it has no lienable interest in this property; that the entire property belongs to the state of Idaho and to the United States—that the canal system and the water and the entire works belong to the state of Idaho, and that the lands to be irrigated principally belong to the United States. Appellants contend that the only interest they have is that they may do this work and receive their pay, and that the law does not permit a lien either against the state or the general government."

After discussing the laws pertaining to construction companies of the kind under consideration and the rights of such companies and their interests in and to canals and water systems by them constructed, and after considering at some length the contract entered into between said Twin Falls Land & Water Company and the state of Idaho, the court said:

"The foregoing are some of the numerous rights and interests we find provided and stipulated for in the contract entered into between the appellant corporation and the state. As to the legal effects of these various stipulations and provisions and the extent of the rights, title and interest acquired by the appellant corporation under them, we express no opinion, nor are we required in this case to determine whether they are sufficient on which to found or rest a mechanic's lien. That the Twin Falls Land & Water Company had, and still has, an interest in this canal system and the lands thereunder and the waters appropriated for their irrigation and reclamation, and that under the statutes and decisions of this state such property rights are real estate, there can be no doubt. . . . . In this case there is no contention made that the lien claimant can acquire any greater right or interest

under its lien than that owned and possessed by the Twin Falls Land & Water Company. . . . . Under this enactment of the state legislature, it is clear to us that the contractors and subcontractors under a construction company like the appellant would be entitled to avail themselves of the benefit of the lien laws of the state, and that in case of foreclosure and sale under the lien they would be entitled to sell all the right, interest and claim of the construction company, and that the purchaser at such foreclosure sale would be subrogated to all the rights, interests and privileges of the construction company therein. . . . . This lien extends only to the interest, claim and right of the Twin Falls Land & Water Company."

In this case the lien extends only to such right, title and interest as the Canyon Canal Company, Limited, had in the property at the time the lien of the respondent attached to it, subject to the lien, if any, now existing and to the extent that the same does exist, of that certain mortgage made and executed by the said Canyon Canal Company to the American Trust & Savings Bank, as trustee, for the purpose of securing the payment of bonds of said canal company in the sum of $350,000.

Our attention has been directed to the case of *Childs v. Neitzel*, 26 Ida. 116, 141 Pac. 77, wherein it is said: "Construction companies of this kind will not be permitted to do indirectly what they are prohibited from doing directly. They will not be permitted to make contracts with third parties in regard to the construction or completion of an irrigation system whereby the land owners or purchasers of water rights can be deprived of the rights acquired under their water right contracts. For instance, if a company, such as the Murphy company, fails to complete its system and furnish the water as provided in the water right contracts, or if such company should sublet the construction of its system and fail and neglect to pay such subcontractor, the subcontractor would not acquire greater rights as against the water right purchasers than the irrigation company itself had under its contract with the purchasers of water rights, and could

not deprive the purchasers of water rights under such system of their rights, or acquire a right by foreclosure of a lien or mortgage for such construction work as would deprive the water right purchasers of their rights under their contracts."

There appears to be no discord between that opinion and that in case of *Bennett v. Twin Falls Land & Water Company, supra,* upon the point under consideration, and it is not the intention to express anything herein from which it may be inferred that a purchaser at a sale of property to satisfy a mechanic's lien can acquire any greater right, title or interest in or to the property than the owner had at whose instance the improvement was made.

On April 9, 1913, the trial judge addressed a letter to counsel for the respective parties indicating that the judgment would be in favor of the respondent, and the amount thereof. On the 14th of said month counsel for the respondent served upon counsel for the appellants, and filed, a memorandum of costs and disbursements amounting to $421.50. The findings of fact, conclusions of law and judgment were made and entered on April 21, 1913, and thereafter no memorandum of costs and disbursements was filed. On May 15, 1913, counsel for appellants served notice of motion to strike said memorandum of costs and disbursements from the files for the reason that the same had been prematurely filed. Thereafter the motion was submitted to the court and denied. Both appellants have appealed from the order denying said motion.

The right to recover costs is statutory and the prevailing party cannot recover his costs unless he conforms to the provisions of the statute. The law of Idaho upon this subject is to be found in sec. 4912, Rev. Codes, and the part thereof necessary to be considered here is as follows:

"The party in whose favor the judgment is rendered and who claims his costs, must, within five days after the verdict or notice of the decision of the court or referee, file with the clerk, and serve upon the adverse party or his attorney, a copy of a memorandum of the items of his costs and necessary disbursements in the action or proceeding. . . . . "

The question of law presented for determination is as to the meaning of the words "decision of the court" as used in said section of the codes.   Sec. 4407, Rev. Codes, is as follows: "In giving the decision, the facts found and the conclusions of law must be separately stated.   Judgment upon the decision must be entered accordingly."

In the case of *Stewart Min. Co. v. Ontario Min. Co.,* 23 Ida. 724, 129 Pac. 932, this court, in the first section of the syllabus, said:

"Under the statute of this state, sec. 4406, Rev. Codes, the decision of the trial court consists of the findings of fact and conclusions of law which must be in writing and filed with the clerk.   An oral opinion announced by the court from the bench prior to making of findings of fact and conclusions of law, or a written opinion addressed to counsel which is not in the nature of findings and conclusions, is not the decision of the court, and exceptions taken thereto and assignments of error directed  against  such an opinion are not assignments against the decision of the court, and will not call for a review thereon on appeal."

See *Porter v. Hopkins,* 63 Cal. 53; *Sellick v. De Carlow,* 95 Cal. 644, 30 Pac. 795; *McDonnell v. Huffine,* 44 Mont. 411, 120 Pac. 792.   We conclude that the letter addressed to counsel for the parties litigant is not "notice of the decision of the court" as contemplated by said sec. 4912, Rev. Codes, and that the memorandum of costs and disbursements was, therefore, prematurely filed.

Respondent contends that the phrase "notice of decision" contemplates a notice to the successful party by the party unsuccessful other than the mere filing of said findings and conclusions, and that if the letter from the court is not such notice, respondent has never yet had "notice of the decision of the court," and that it is not now in default for failure to file a memorandum of costs and disbursements as provided by said sec. 4912.   The question of whether or not the respondent is in default in this behalf is not properly before this court for determination.   The question presented by this appeal is, "was the memorandum of costs and dis-

bursements prematurely filed?" We have answered that question in the affirmative.

The order of the court denying the motion to strike the said memorandum of costs and disbursements from the files is reversed, with instructions that the judgment be modified accordingly. No costs upon appeal will be allowed.

Budge, J., and District Judge Bryan concur.

Sullivan, C. J., did not sit at the hearing of this case and took no part in the decision.

(July 8, 1915.)

ON REHEARING.

BUDGE, J.—Petitions for rehearing were filed on behalf of each of the appellants in the above-entitled cause. After a careful examination of the petitions and the authorities therein cited this court concluded to submit to counsel for the respective parties the following questions, and grant a rehearing thereon:

(1) Whether or not this court should determine, under the pleadings and evidence in this case, the nature, character and extent of the lien in favor of J. W. Smith, respondent, against the Emmett Irrigation District, more definitely than has been done in the opinion heretofore filed.

(2) Whether or not the Emmett Irrigation District is entitled to be subrogated to the rights of the holders of first mortgage bonds, viz., the $350,000 issue authorized by the Canyon Canal Company, and to what extent.

(3) Whether or not the item of $900 attorney fee is a lien against the property of the Faris-Kesl Construction Company.

So far as the first question that was submitted for argument is concerned, this court, in order to go beyond the original opinion and determine more definitely the nature, character and extent of the lien in favor of respondent Smith

against the Emmett Irrigation District, would necessarily be required to go outside the record and the issues made by the pleadings and anticipate certain litigation which may arise between persons not parties to this action to determine their interests and the extent to which the property of the Emmett Irrigation District will be subject, under the litigation, to the payment of the debt due to the respondent Smith. If these matters were properly before us, we would gladly dispose of them in order to avoid further litigation. These interests, no doubt, will be finally determined at the proper time and upon issues properly framed and supported by proof.

The second question may be disposed of by merely directing attention to the failure of the appellant Emmett Irrigation District to allege or establish, by evidence or otherwise, any fact or facts which would justify this court in applying the doctrine of subrogation in favor of appellant in this proceeding.

To the third and last question, the item of attorney fee, there is nothing further that can be added than is found in the original opinion which, in our judgment, is clearly decisive of that question.

We have reached the conclusion that the foregoing questions, as well as all other questions involved in the petitions for rehearing, and which were presented to the court upon reargument, were correctly decided in the original opinion in this case, which is accordingly reaffirmed.

Morgan, J., and Bryan, District Judge, concur.