RUTH K. MUDGE v. ALLEN JONES AND WILLIAM H. STEBBINS, AS INSPECTORS OF ELECTION IN AND FOR THE THIRD WARD OF THE CITY OF HASTINGS.

*School meetings—Qualification of voters.*

By an act of the Legislature incorporating the board of education of the city of Hastings, the entire territory embraced within its corporate limits was constituted one school district and the schools therein placed under the control of said board, one member of which was thereafter to be elected in each of the four wards of said city at the annual city election, but upon a separate ticket from that voted for

city officers. The act failed to prescribe by whom said members were to be elected, or the qualifications of such voters, but the city charter provided for the election of city officers from among the qualified electors of the city, who must possess the qualifications of township electors, who under the constitution are confined to male persons.

Plaintiff, a widow, who had resided in the third ward of said city for more than one year next preceding the annual city election in 1884, and was possessed of the other qualifications prescribed by section 5049, How. Stat., for voters in the primary school districts of this State, demanded the right to vote at said election, in said ward, for a member of said board of education, presenting a ballot in the statutory form and offering to be sworn as to her qualifications, which demand and offer were refused by defendants who were inspectors of said election, in said ward, whereupon she brought this suit.

· *Held*, that as the members of the board of education are required to be elected at the annual city election, and the act creating such board fails to prescribe the qualifications of the electors who shall vote for such members, it will be presumed that they are to be elected by persons having the qualifications of electors, at said election, for city officers.

*Held*, further, that as no school meeting could be held in said city after the incorporation of said board of education, the provisions of section 5049, How. Stat., prescribing the qualifications of electors at school district meetings cannot be given effect at the elections held for members of said board of education, which are not school meetings.

Error from Barry. (Hooker, J.) Argued November 6, 1885. Decided January 20, 1886.

Action on the case for denial of alleged right to vote. Judgment for defendants. Plaintiff brings error. Affirmed.

*C. G. Holbrook* and *Clement Smith*, for appellant :

Plaintiff bases her right to vote upon Section 5049, How. Stat., claiming it to be a valuable right possessed by her . when the act incorporating the board of education of the city of Hastings was passed, of which she cannot be deprived by express enactment, much less by implication. The act in question does not say who are qualified electors. The members of the board are not city officers in the ordinary sense, and are voted for upon a separate ticket. The city of Hastings is a graded school district, nothing more, nothing less, and has all the rights of any district. The women of graded districts have the same rights as in primary districts, unless changed by law.

Union and graded schools whether created by special act or organized under general laws, are subject to the general primary school law, except in so far as the acts creating them or under which they are organized are inconsistent with it: *People v. Board of Education of Detroit,* 18 Mich. 400.

Defendants denied plaintiff's rights. This was a legal injury to her, to redress which this action lies: Cooley on Torts, 413, 414, 296, 297.

*Knappen & Van Arman,* for defendants:

Defendants insist that by the incorporation of this board of education the machinery of the corporate or municipal government of school affairs is entirely changed, while the educational rights, duties and liabilities of the school remain unchanged. The right of the Legislature, notwithstanding section 5049, How. Stat., to provide that the qualifications of voters for members of the board of education shall be the same as for general city officers, is unquestioned. Women have no constitutional right to vote even at the school district meeting contemplated by the general school law. Suffrage is a privilege, not a right: Cooley's Con. Lim., 754. Defendants having acted in good faith under the advice of the common council and of reputable attorneys, and fully believing plaintiff not entitled to vote cannot now be mulcted in damages or costs, even if plaintiff was unjustly deprived of a right: Cooley on Torts, 413–15; *Gordon v. Farrar,* 2 Doug. (Mich.) 411; *Jenkins v. Waldron,* 11 Johns. 113.

CHAMPLIN, J. The plaintiff brought an action of trespass on the case against the defendants, as inspectors of election, to recover damages for refusing to receive the vote of plaintiff for a member of the board of education for the city of Hastings at the election held therein on the seventh day of April, 1884. The declaration is as follows: .

"*Barry County, ss.:* And now comes Ruth K. Mudge, the plaintiff herein, by her attorneys, Smith & Colgrove and C. G. Holbrook, and complains of Allen Jones and William H. Stebbins, as inspectors of election in and for the Third ward of the city of Hastings, defendants herein, in an action of trespass on the case, for that heretofore, to wit, on the first Monday of April last, the said plaintiff was, and for more than one year next immediately preceding that date had been, and now is, a citizen of the city of Hastings, and a resident in the Third ward of said city. And the plaintiff further alleges that she is a citizen of the United States and

of the State of Michigan, and she is of the age of twenty-one years and upwards, to wit, of the age of sixty years, and during all the time she has resided in said Third ward of the said city of Hastings, has owned in her own right and name in fee-simple a large amount of real estate and personal property situated in said Third ward, liable to assessment for school taxes, and upon which she actually pays a large amount of school taxes for the support of the public schools in and for the city of Hastings, and that on the said first Monday of April last she was and now is a legally qualified voter for school purposes, and had a lawful right on that day to vote at the election held in said Third ward of the city of Hastings for one member of the board of education of the city of Hastings. And the plaintiff further alleges that on the said first Monday of April last the annual city election was held, and that the said defendants are and were then residents of said Third ward, and aldermen of said ward, and inspectors of election held in said ward on that day, and acted as such inspectors of election, whereby it became their duty to receive and count the vote of said plaintiff at such election for one member of the board of education of the city of Hastings; and she alleges that she did present herself on that day at the voting precinct in said Third ward of said city, before said defendants as inspectors of said election, and then and there offered to vote, and tendered her vote for one John C. Lampman as and for a member of the board of education in and for said city, whose name was printed on a ticket separate from all other city officers, to be voted for in said ward, and claimed the right to do so, and then and there offered to be sworn as to her qualifications under the law, but that the said defendants, as inspectors of election in and for said Third ward of said city, did then and there arbitrarity, unjustly, and unlawfully deny the right of said plaintiff to vote for one member of the board of education of the city of Hastings, and then and there arbitrarily, unjustly, and unlawfully refuse to receive the said vote of said plaintiff, and did refuse to count the same, and did refuse to administer to plaintiff the oath as to her qualification, under the law, to vote for a member of said board of education, whereby said plaintiff was wholly deprived of her lawful right and privilege of voting for a member of the board of education for the city of Hastings, to her great damage, to wit, one hundred dollars.

"SMITH & COLGROVE,
"C. G. HOLBROOK,
"*Attorneys for Plaintiff.*"

The defendant's plea filed in this Court was the general issue.

The cause came on to be tried in the circuit court, without a jury, who found the following facts, based upon the stipulation of the parties, namely:

"Plaintiff is a widow, and on the first Monday of April last was a resident in the Third ward of the city of Hastings, and had been for more than a year then next preceding; that she was then of the age of twenty-one years and upwards, and a citizen of the State of Michigan, and that she was then and there the owner in her own right and name of real and personal property situated in said Third ward liable to assessments for school taxes, and on which she paid school taxes for the support of the public schools of said city. Defendants, on said first Monday of April last, were aldermen of the Third ward of the city of Hastings, and were, by virtue of said office, inspectors of the general city election held in said Third ward of said city on the said first Monday of April last. Plaintiff, at said general city election, offered and tendered her ballot for one member of the board of education of the city of Hastings, to be then and there elected in and for the Third ward of the city of Hastings. Said ballot was a printed ticket, containing the name and office of a candidate for member of the board of education in and for said Third ward, and was separate from the ballots for all other city offices. Plaintiff then and there offered to be sworn as to her qualifications as such voter. Said defendants, as such inspectors of election, refused to swear said plaintiff as to her qualifications as such voter, and refused to receive her said vote. The board of education of the city of Hastings was incorporated by act of the Legislature of the State of Michigan, approved April 2, 1873. From and including said year 1873 up to said year 1884 no woman had ever voted at elections for member of the board of education of said city, nor offered to vote at such elections. That a few days previous to said general election of April, 1884, said inspectors of election were informed that certain women would offer to vote at said general election, and accordingly, acting under express authority of the common council of said city, applied for counsel in the premises, of reputable legal counselors, by whom said inspectors were advised that women had no legal right to vote for such members of the board of education at said election; that defendants refused to receive the vote of said plaintiff in

good faith, relying upon said legal counsel and believing the same to be correct."

Upon the above facts the court found, as matter of law, that the defendants were not liable to the plaintiff in the action, and entered a judgment in their favor, of no cause of action, and that neither party recover costs.

By section 1 of the act incorporating the board of education of the city of Hastings it is enacted that the city of Hastings shall constitute one school-district. The city, for municipal purposes, is divided into four wards, and at all annual city elections each ward is made a voting precinct. The aldermen of the wards are created *ex officio* inspectors of election in their respective wards. Section 2 of the act provides that

" There shall be elected, at the annual city election, on the first Monday in April in the year 1873, and every year thereafter, on a ticket separate from other city officers, in each of the wards of the city of Hastings, one member of the board of education, who shall hold his office for the term of three years from and after the first of July next ensuing."

The act nowhere says by whom the members of the board shall be elected, nor in any manner attempts to prescribe the qualifications of the electors who may vote for such members. The election, however, being required to be held at the annual election of the municipality, it is to be presumed that the members were to be elected by those having the qualification of electors at such election for city officers. The charter provides that the officers enumerated shall be elected from among the qualified electors of the city: Act No. 228, Sess. Laws 1873. The qualifications of such electors are required to be the same as those in the townships (Act. No. 216, Sess. Laws 1871), and those are defined by the general law to be as follows: "Each inhabitant of any township having the qualifications of an elector, as specified in the constitution of this State, and no other persons, shall have a right to vote on all matters and questions before any township meeting:" How. Stat. § 781. The Constitution confines the right to vote to male persons.

The plaintiff claims, however, to exercise the right of suffrage by virtue of section 10 of the act incorporating the board, taken in connection with section 5049 of Howell's Statutes relating to primary schools. Section 10 reads as follows:

"All provisions of the general laws of this State relative to common and union schools shall apply and be in force in said city except such as may be inconsistent with the provisions of this act, or with the by-laws' and ordinances of the board of education, made under this act."

And section 5049 reads as follows:

"Every person of the age of twenty-one years who has property liable to assessment for school taxes in any school-district, and who has resided therein three months next preceding any school meeting held in said district, or who has resided three months next preceding such meeting on any territory belonging to such district at the time of holding said meeting, shall be a qualified voter in said meeting upon all questions; and all other persons who are twenty-one years of age, and are the parents or legal guardians of any children included in the school census of the district, and who have for three months as aforesaid been residents in said district, or upon any territory belonging thereto, at the time of holding such school meeting, shall be entitled to vote on all questions arising in said district which do not directly involve the raising of money by tax."

Upon the passage of the law incorporating the board of education, the law, in express terms, constituted the whole territory embraced in the corporate limits of the city one school-district, and placed the schools therein under the control of the board. No school meeting could thereafter be held therein, because none was authorized by the law. The qualifications of electors at school meetings cannot be ingrafted upon or given effect at the elections held under the act, because manifestly inconsistent therewith. If a person qualified to vote at a school meeting, where all the elec tors are convened at one place in the district, is entitled to vote in a ward of the city at the annual election, there is not any reason why such person may not vote in any ward in the school-district, since it is residence in the district which

qualifies him, and the primary school law does not restrict his residence to the ward.   If this should be held to be the true construction of the law, it might be found that some persons would vote for as many members as there were wards, or combine upon some one or more particular candidates, and by importing votes from other wards elect a member who otherwise might not have been elected by the electors of his ward.   Neither do I see any reason why the plaintiff is not as fully qualified, under the provisions of section 5049, to vote in any of the other three wards of the city as she was to vote in the Third ward.   They are all within the same school-district.   But the fact is that the annual city election is not a school meeting, and the primary school laws are inapplicable to such elections.   Until the Legislature confers the right of suffrage upon females in the election of members of the board of education, they must continue to be elected by the electors qualified to vote for city officers at the annual township elections.

The judgment must be affirmed, with costs.

The other Justices concurred.