777 P.2d 729

Jerry Bryant O'NEIL and Jerry Bryant O'Neil, guardian ad litem for David Arthur O'Neil, Wendy K. O'Neil, Laura Beth O'Neil, Sara Louise O'Neil, and Maria Jennifer O'Neil, Plaintiffs–Appellants,

v.

Francis K. SCHUCKARDT, aka Bishop Francis of Fatima Crusade, Father R. Denis Chicoine, Sister Mary Bernadette, Janet Urban, Alvina Urban, and Christ the King Priory Inc., an Idaho corporation, Defendants–Respondents.

No. 17520.

Supreme Court of Idaho.

July 11, 1989.

Rehearing Denied Aug. 25, 1989.

Jerry B. O'Neil, Kallispell, Mont., pro se.

Stephen W. French, of Boise, and Russell K. Jones, of Spokane, Wash., for respondents. Mr. Russell K. Jones argued for respondents.

Respondent Francis K. Schuckardt did not appear.

JOHNSON, Justice.

Several issues have been presented to us in this case. We address only the issue of the timeliness of motions for new trial, since our decision on this issue disposes of the appeal. We hold that the trial court was without jurisdiction to grant a motion for new trial that was not served in a timely fashion under I.R.C.P. 59(b) (1980). The fact that the motion was denominated as an alternative to a timely motion for

judgment notwithstanding the verdict does not change the result. We also hold that where a judgment is reinstated as directed by this Court in an appeal from the granting of a motion notwithstanding the verdict, a motion for new trial based on the reinstated judgment is not timely.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

This case has been the subject of a previous appeal. *O'Neil v. Schuckardt*, 112 Idaho 472, 733 P.2d 693 (1987), (*O'Neil I*). Our opinion in *O'Neil I* details the background of the case. In *O'Neil I* we noted that after the jury rendered its verdict in favor of O'Neil and his children, respondents "moved for judgment notwithstanding the verdict, and, alternately, for remittitur or new trial." *Id.* at 475, 733 P.2d at 696. After remanding the case to the trial court for reinstatement of the verdict in favor of the children and for a new trial on O'Neil's cause of action for invasion of privacy and on the claim for punitive damages, the Court stated:

> We note that the trial court has not yet ruled on [respondents'] motion for remittitur or, in the alternative, for a new trial. We do not by this opinion decide whether that motion should have been, or may yet be, considered or granted, because that issue was neither raised nor argued on appeal.

*Id.* at 480, 733 P.2d at 701.

The chronology of events concerning this motion and the action taken by the trial court is as follows:

1. The judgment entered following the verdict was dated August 9, 1983.
2. On August 12, 1983, respondents filed a motion for judgment notwithstanding the verdict.
3. On September 16, 1983, respondents served on O'Neil and his children a motion to amend the motion for judgment notwithstanding the verdict "to expressly include therein the following alternatives for relief: for remittitur as to the amount of the verdict, or for a new trial."
4. The motion for judgment notwithstanding the verdict and the motion to amend were argued on October 18, 1983.
5. On May 2, 1984, the trial court granted the motion for judgment notwithstanding the verdict. In doing so the trial court stated that it was "unnecessary to consider [respondents'] alternative motion for remittitur or for a new trial."

Following the remand ordered by this Court in *O'Neil I*, O'Neil and his children moved for summary judgment on the issues of damages for the invasion of O'Neil's privacy and liability of respondents for punitive damages. On June 29, 1987, the trial court granted summary judgment to O'Neil for compensatory damages for invasion of privacy and to O'Neil and his children for punitive damages for invasion of privacy. The trial court stated that the amount of these damages would be determined at trial.

On July 6, 1987, the defendants filed a motion for new trial or remittitur. On July 23, 1987, the trial court ordered that the portion of the judgment of August 9, 1983, that awarded compensatory damages in favor of the children be "reinstated nunc pro tunc." On April 12, 1988, the trial court granted respondents a new trial on the issues of liability and damages relating to the claims of O'Neil and his children for invasion of privacy. O'Neil and his children have appealed the granting of this new trial.

## II.

### THE MOTIONS FOR NEW TRIAL WERE NOT TIMELY.

O'Neil and his children opposed both the motion to amend the motion for judgment notwithstanding the verdict in 1983 and the motion for new trial or remittitur in 1987 on the ground that these motions were not timely. At the time each of these motions was filed I.R.C.P. 50(b) (1980) required that a motion for judgment notwithstanding the verdict be filed within ten days after entry of judgment and allowed a motion for new

trial to be joined with it or prayed for in the alternative. I.R.C.P. 59(b) required a motion for new trial to be served not later than ten days after the entry of judgment. I.R.C.P. 6(b) provided that the time for taking any action under I.R.C.P. 50(b) or 59(b) might not be extended, except to the extent and under the conditions stated in these rules. Neither I.R.C.P. 50(b) nor 59(b) provided for an extension of the ten day limitation for filing or service after judgment was entered.

The trial court did not specifically grant the motion to amend the motion for judgment notwithstanding the verdict. By mentioning in the order granting the motion on May 1984 that it was unnecessary to consider "the alternative motion for remittitur or for a new trial," the trial court might be read to have granted the motion to amend by implication. However, whether the trial court intended to grant the motion to amend or not, we would reach the same conclusion.

■■■ Clearly, a motion for new trial was not filed within ten days after judgment was entered. The attempt to piggyback a late filed motion for new trial by amending a timely motion for judgment notwithstanding the verdict is not supported by our rules of civil procedure. I.R. C.P. 6(b) does not allow for the extension of the time for filing a motion for new trial. We also reject the argument of respondents that I.R.C.P. 15(c) would permit the filing of the motion for new trial to relate back to the filing of the motion for judgment notwithstanding the verdict. I.R.C.P. 15(c) allows an "amended pleading" to relate back to the date of the original pleading, if the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth in the original pleading. I.R.C.P. 7(a) limits "pleadings" to a complaint, an answer, a reply to a counterclaim, an answer to a cross-claim, a third-party complaint, a third-party answer and a reply to an answer or a third-party answer, if the court allows. Motions are not included in the list of pleadings allowed. Motions are not pleadings in the sense used in I.R.C.P. 15(c).

Therefore, I.R.C.P. 15(c) has no application to the amendment of motions. If the motion to amend the motion for judgment notwithstanding the verdict had been granted, then the motion for remittitur or new trial would not have related back to the date the motion for judgment notwithstanding the verdict was filed or served.

■■ The motion for new trial filed by respondents on July 6, 1987, was nothing more than an effort to resurrect a motion that should have been filed within ten days after the judgment was entered on August 9, 1983. The order of the trial court granting summary judgment on June 29, 1987, did not revive the time for filing a motion for new trial. All that order did was to restate this Court's ruling in *O'Neil I.* There, we reinstated the verdict in favor of the children for compensatory damages for invasion of privacy and remanded the case for new trial on O'Neil's cause of action for invasion of privacy and on the claim for punitive damages. No summary judgment for liability on these claims was necessary. Likewise, the judgment on remand of July 23, 1987, only reinstated nunc pro tunc the judgment of August 9, 1983, as it related to the compensatory damages awarded to the children. Neither of these "judgments" revived the time within which respondents might file a motion for new trial.

We point out that our opinion in *O'Neil I* did not validate the timeliness of the motion for remittitur or for new trial. We specifically stated that our opinion did not "decide whether that motion should have been, or may yet be, considered or granted." 112 Idaho at 480, 733 P.2d at 701.

In *Wayne v. Marquardt*, 54 Idaho 211, 30 P.2d 369 (1934) this Court held that where a motion for new trial was not filed within the time allowed by the statute, "the district court was without jurisdiction and properly ruled in denying the motion for new trial." *Id.* at 213, 30 P.2d at 369. The statute at issue was very similar to I.C.R.P. 59(b). It required a notice of a motion for new trial to be served within ten days after the verdict. Following *Marquardt*, we hold that the trial court in this case was

without jurisdiction to consider the motions for new trial.

## III.

## CONCLUSION.

Because the motions for new trial were not served within the time allowed by the rules, the trial court had no jurisdiction to grant a new trial. We reverse the order granting a new trial and remand the case to the trial court for reinstatement of the verdict awarding the children $50,000 each and direct the trial court to enter judgment on this portion of the verdict. We also remand the case for a new trial on O'Neil's cause of action for invasion of privacy and on the claim for punitive damages.

Costs to appellants. No attorney fees on appeal.

BAKES, C.J., and HUNTLEY, J., concur.

SHEPARD, J., sat, but did not participate in the opinion due to his untimely death.

BISTLINE, Justice, specially concurring.

Having joined Justice Johnson's opinion I write to suggest that the lack of jurisdiction mentioned in *Wayne v. Marquardt* was, as it is here, in the power sense, i.e., the power or authority which was conferred upon the court to hear and *determine* a timely motion for a new trial. Although the district court, in the person of a district judge, if not otherwise disqualified, was cloaked with jurisdiction *in rem* and jurisdiction *in personam*, the statute (in *Wayne v. Marquardt*) and the rule (in this case) provided jurisdiction only within the time limits delineated.

Moreover, the particular district judge who granted the motion and vacated the judgment directed by this Court, had been timely disqualified from acting further in this case.

This Court's remittitur was sent to the court below under date of 12 March, 1987, and copies were presumably mailed to the parties. On April 16, the plaintiffs filed and served their Motion for Disqualification, requesting that another judge be substituted in the place and stead of the judge who had presided in the trial which culminated in the appeal to this Court, S.Ct. No. 15580.

Under date of 14 May, 1987, an order was entered by Chief Justice Shepard which, after reciting the aforesaid disqualification, reassigned the *O'Neil* case, "First Judicial District, Kootenai County No. 34967, to the Administrative District Judge for the purpose of reassigning this case *to a district judge* in the First Judicial District, *who has not before been disqualified* in this action, etc. . . . . ."

The case was thereafter assigned to the Honorable James N. Judd for the disposition of any pending and further proceedings.

Thereafter, on the 8th day of May, 1987, the defendants moved for reconsideration of the order of automatic disqualification [1] based on the grounds that said defendants "wanted" the disqualified judge to hear their motion for a new trial.

The administrative judge heard the motion for reconsideration on May 27, 1987. The court minutes of that date reflect in pertinent part: that the judge had made numerous contacts with the disqualified judge who had agreed to hear the case, with Court Administrator Bianchi, and with Judge Judd. Subsequently on June 17 a written order was presented for signature which contained language concluding that the disqualification was untimely within the meaning of IRCP 40(d)(1) as to a pending motion for new trial. The order was executed by the administrative judge, thus compelling the plaintiffs to argue against the motion before the judge whom they had disqualified, being the same judge who had ruled against them on the defendants' motion for judgment N.O.V.—which had precipitated the prior appeal.

---

1. The provisions of Rule 40(d)(1)(F) clearly allowed the plaintiffs to file a motion for disqualification without cause. The resultant order is automatic, and there is no right to move for reconsideration of an automatic (without cause stated) disqualification.

Clearly there was no jurisdiction—in the power or authority sense—in any of the involved district judges to disregard the rule which allows a timely motion for automatic disqualification. Equally clear, the disqualification was not untimely.

Moreover, it was highly improper, as well as an excess of jurisdiction, to not comply with this Court's aforesaid directive in the matter of the assignment of a judge. As a result the disqualified judge who was improperly reassigned to preside did not have jurisdiction to preside over the cause, over the parties, or to entertain the motion for a new trial, even had it been timely filed.